IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BRIAN EASON**, | Case No. 3:15-cv-02335-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **ELMER'S RESTAURANTS, INC.,**<br>**ELMER'S FRANCHISE SYSTEMS, INC.,**<br>**KARSAN, INC.**, and **SANDRA LEWIS**, | |
| Defendants. | |

Gregory Kafoury, Mark McDougal, Jason L. Kafoury, and Adam A. Kiel, KAFOURY & MCDOUGAL, 411 S.W. Second Avenue, Suite 200, Portland, OR 97204. Of Attorneys for Plaintiff.

David G. Hosenpud, LANE POWELL, PC, 601 S.W. Second Avenue, Suite 2100, Portland, OR 97204; Laura T. Morse, Colleen Mayer and Joanna R. Brody, LANE POWELL, PC, 1420 Fifth Avenue, Suite 4200, Seattle, WA 98101. Of Attorneys for Defendants Karsan, Inc. and Sandra Lewis.

Elizabeth E. Lampson, DAVIS ROTHWELL EARLE & XOCHIHUA, PC, 111 S.W. Fifth Avenue, Suite 2700, Portland, OR 97204. Of Attorneys for Defendants Elmer's Restaurants, Inc. and Elmer's Franchise Systems, Inc.

**Michael H. Simon, District Judge.**

Plaintiff Brian Eason ("Eason" or "Plaintiff") brings three claims against Defendants

based on allegations of racial discrimination in a place of public accommodation. Eason asserts

that Defendants have violated Revised Code of Washington ("RCW") 49.60.030, 42 U.S.C.

§ 2000a, and 42 U.S.C. § 1981. According to Eason, Defendants treated Eason in a racially

discriminatory manner while he was dining at an Elmer's Restaurant in Vancouver, Washington,

on approximately December 16, 2014. Defendants Karsan, Inc. ("Karson") and Sandra Lewis

("Lewis") move to transfer this action to the United States District Court for the Western District

of Washington, Tacoma Division. Defendants Elmer's Restaurants, Inc. and Elmer's Franchise

Systems, Inc. (collectively the "Elmer's Defendants") do not object to the motion. For the

reasons below, the motion to transfer venue is denied.

## STANDARDS

On a motion to transfer venue under 28 U.S.C. § 1404(a) ("§ 1404(a)"), a court may

transfer any civil action "[f]or the convenience of the parties and witnesses, in the interests of

justice." § 1404(a). The forum to which transfer of venue is sought must be a district court where

the case "might have been brought." *Id*. Under § 1404(a), the district court has discretion "to

adjudicate motions for transfer according to an 'individualized, case-by-case consideration of

convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting

*Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *see Jones v. GNC Franchising, Inc.*, 211 F.3d

495, 498-99 (9th Cir. 2000).

## BACKGROUND

Eason, an African-American man, lives in Oregon and works as a sheriff's deputy for

Multnomah County. He also runs his own realty office. On approximately December 16, 2014,

he went to an Elmer's Restaurant, located at 7105 NE 40th Street, Vancouver, Washington, near

Andresen Road (the "Andresen Elmer's"), to have breakfast and write holiday cards to his realty

clients. A waitress took his order and then, according to Eason, asked him to prepay for his meal.

When Eason asked the waitress why he had to prepay, she explained that Lewis, identified as the

"owner," had instructed her to require prepayment. According to Eason, the waitress continued to demand prepayment despite telling him that she knew that the policy was racist. Eason asserts that although Caucasian customers were dining in the restaurant that morning, Caucasian customers did not have to prepay for their meals.

Eason brought this action in the Oregon Circuit Court in Multnomah County. Karsan and Lewis removed the case to this Court, located in Portland, Oregon, based on federal question jurisdiction. Karsan is incorporated in Washington and owns and operates the Andresen Elmer's. Lewis, the president, chairman, and co-owner of Karsan, lives in Washington. The Elmer's Defendants are incorporated in Oregon and have their headquarters in Portland, Oregon. The Elmer's Restaurant chain was founded in Portland.

## DISCUSSION

Karsan and Lewis move to transfer venue under § 1404(a) to the United States District Court for the Western District of Washington, Tacoma Division.[1] Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Here, it is undisputed that this case could have been brought in the Western District of Washington. Therefore, the Court considers the convenience of the parties and the interests of justice.

When considering whether the convenience of the parties and the interests of justice require a transfer of venue, courts weigh multiple factors. *Jones*, 211 F.3d at 498. The weight accorded to each factor varies with the facts of each case and is within the trial court's discretion.

---

[1] Although Karsan and Lewis argue in some places that the Western District of Washington is "*the* proper venue" and in other places that the Western District of Washington is "*a* proper venue," *see* Dkt. 5 at 5-6 (emphasis added), and that the operative facts all occurred in Washington, Karsan and Lewis do not move to dismiss the case for improper venue under Federal Rule of Civil Procedure l2(b)(3). Accordingly, any defense by Karsan and Lewis of improper venue under Rule 12(b)(3) has been waived. *See* Fed. R. Civ. P. 12(h)

PAGE 3 – OPINION AND ORDER

*Id.* Courts consider both the private interests of the parties and the interests of the public. *Atl.*

*Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 581 n.6 (2013).

Private-interest factors include:

> relative ease of access to sources of proof; availability of
> compulsory process for attendance of unwilling, and the cost of
> obtaining attendance of willing, witnesses; possibility of view of
> premises, if view would be appropriate to the action; and all other
> practical problems that make trial of a case easy, expeditious and
> inexpensive.

*Id.* (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)) (internal quotation marks

omitted). Among the public-interest factors are: "the administrative difficulties flowing from

court congestion; the local interest in having localized controversies decided at home; [and] the

interest in having the trial of a diversity case in a forum that is at home with the law." *Id.*

(quoting *Piper Aircraft*, 454 U.S. at 241 n.6) (alteration in original) (internal quotation marks

omitted); *see Gemini Capital Grp., Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1094 (9th Cir.

1998). Courts also afford "some weight to the plaintiffs' choice of forum." *Atl. Marine*,

134 S. Ct. at 581 n.6.

Consolidating the private-interest and public-interest analysis, the Ninth Circuit identifies

nine factors that trial courts may consider:

> (1) the location where the relevant agreements were negotiated and
> executed, (2) the state that is most familiar with the governing law,
> (3) the plaintiff's choice of forum, (4) the respective parties'
> contacts with the forum, (5) the contacts relating to the plaintiff's
> cause of action in the chosen forum, (6) the differences in the costs
> of litigation in the two forums, (7) the availability of compulsory
> process to compel attendance of unwilling non-party witnesses,
> and (8) the ease of access to sources of proof. . . . [(9)] the relevant
> public policy of the forum state, if any, is at least as significant a
> factor in the § 1404(a) balancing.

*Jones*, 211 F.3d at 498-99. The Court examines each *Jones* factor in turn.

## A.  The Location Where the Relevant Agreements Were Negotiated and Executed

The relevant agreements in this case are any agreements between the Defendants concerning the Andresen Elmer's franchise, prepayment for meals, and treatment of customers of different races.[2] In his complaint, Eason alleges no facts regarding such agreements. In his response to Karsan and Lewis's motion, Eason asserts that the Elmer's Defendants control the official policy of all franchises and worked with Karsan to change any unofficial practice that required African-American customers to prepay for their meals. Eason does not, however, assert that any negotiations occurred in Oregon. In the absence of alleged facts concerning the location of the relevant agreements' negotiation and execution, the Court considers this a neutral factor, neither weighing in favor of nor against denying Karsan and Lewis's motion to transfer venue.

## B.  State Most Familiar with the Governing Law

Eason asserts two claims under federal law and one claim under Washington law. As the Court has noted, "[P]arties routinely call on federal courts to apply the law of other jurisdictions, and courts do not consider the task to be overly burdensome." *Hosick v. Catalyst IT Servs., Inc.*, 2015 WL 6773757, at *7 (D. Or. Nov. 5, 2015); *see Atl.* Marine, 134 S. Ct. at 584 ("[F]ederal judges routinely apply the law of a State other than the State in which they sit."); *Tschudy v. J.C. Penney Corp.*, 2012 WL 1466514, at *2 (S.D. Cal. Apr. 27, 2012) (noting "that federal judges frequently examine the laws of other states without great moment or angst"); *In re Disaster at Riyadh Airport, Saudi Arabia, on Aug. 19, 1980*, 540 F. Supp. 1141, 1153 (D.D.C. 1982)

---

[2] Karsan and Lewis state that the first *Jones* factor is "the location where the relevant conduct occurred." Dkt. 5 at 6. In support of that proposition, Karsan and Lewis cite *Beverage Mgmt. Sys., Inc. v. Ott*, 2013 WL 1296083, at *7 (D. Or. Mar. 26, 2013). In *Beverage Mgmt.*, however, the plaintiff alleged a claim of breach of employment agreement, and in addressing the first *Jones* factor, the court discussed where the employment agreement was "negotiated and executed." *Id.*

("Federal courts are experienced in applying foreign law and should not be reluctant to do so.") (internal quotation marks and citation omitted).

Defendants do not argue that the relevant substantive law of Washington is so arcane that local courts would be at a great advantage when applying their own state law. Additionally, two of the claims asserted by Eason arise under federal law, with which all district courts are equally well acquainted. The Court therefore considers this a neutral factor.

## C.  Eason's Choice of Forum

Generally, the plaintiff's choice of forum is given great weight. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). A defendant need not show the same level of inconvenience to upset the plaintiff's choice of forum under § 1404(a) as in a *forum non conveniens* analysis. *See Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). Nonetheless, a defendant "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). In particular, when a plaintiff resides in the chosen forum, courts give substantial deference to the plaintiff's forum selection. *Piper Aircraft*, 454 U.S. at 255 ("[A] plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum.").

Karsan and Lewis argue that the Court should give Eason's choice of forum less weight because Eason has attempted to "forum shop" by filing his case in Oregon state court. Defendants correctly note that "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968). Here, however, the forum of original selection does have a particular interest in the parties and subject matter: Eason resides in Oregon, two of the

defendants are Oregon corporations, and the Elmer's Restaurants chain was founded in Oregon. If the Elmer's Defendants and their franchisees enforced a racially discriminatory policy, Oregon would have an interest in remedying it. In addition, as a resident of Oregon, Eason is entitled to a degree of deference in his choice to bring this action in Oregon, and Karsan and Lewis have identified no special circumstances that weigh against giving deference to Eason's choice. Accordingly, the Court finds that this factor weighs against transfer.[3]

## D.  The Parties' Contacts with the Forum

Karsan and Lewis assert that they have only minor contacts with the District of Oregon. Karsan is incorporated in Washington, and Lewis lives and works in Washington. According to Karsan and Lewis, the Elmer's Defendants also conduct regular, sustained business in Washington and could easily litigate there. Karsan, however, has created an ongoing relationship with the Elmer's Defendants, consisting of two Oregon entities, and undertook ongoing obligations to those Oregon entities. Karsan and Lewis also served Eason, an Oregon resident, at the Andresen Elmer's. Because the parties have contacts with both the forum and the state to which Karsan and Lewis seek to transfer the case, the Court considers this factor neutral.

## E.  The Contacts Relating to Eason's Cause of Action in the Chosen Forum

Eason is an Oregon resident who allegedly suffered harm. Karsan and Lewis's contacts with Oregon are related to any franchise agreements with the Elmer's Defendants and service of

---

[3] *Partney Construction Inc. v. Ducks Unlimited, Inc.*, 2008 WL 4838849 (D. Or. Nov. 3. 2008), cited by Karsan and Lewis, is not to the contrary. That case involved a contract dispute in which all relevant work occurred in a remote location in eastern Nevada. The plaintiff's residency in Oregon was "the only significant connection to Oregon." *Id.* at *2. Because "[t]he operative facts occurred in Nevada, Nevada law will likely control the decision and the body of evidence is in or near Nevada," the court transferred the case to Nevada under § 1404(a). *Id.* at *3. In contrast to *Partney Construction*, the majority of claims in this case arise under federal law and the evidence, even if located in Vancouver, Washington, is closer to this Court than to the federal court in Tacoma, Washington, to which the defendants seek to transfer the case.

Oregon customers. Most of the contacts relating to Eason's cause of action are, however, in Washington, where the alleged instance of racial discrimination occurred. Thus, because there are somewhat more significant contacts relating to Eason's cause of action in Washington than in Oregon, this factor slightly favors transfer.

**F.  The Differences in the Costs of Litigation in the Two Forums**

Eason points out that the incident in question took place in Vancouver, Washington, a city that is less than 20 miles from Portland, Oregon. On the other hand, Tacoma, Washington, the division of the Western District of Washington to which Karsan and Lewis seek to transfer the case, is approximately 130 miles from Vancouver. Even if every relevant witness lives in Vancouver, the cost of bringing these witnesses 20 miles from Vancouver to Portland will be significantly less than bringing them 130 miles from Vancouver to Tacoma, especially for a trial that the parties estimate will take approximately three or four days to complete. Karsan and Lewis also do not allege any undue financial burden in litigating in Portland, near where they live or are located, and the financial burden to Eason in litigating in Tacoma is obvious. Accordingly, the Court finds that this factor weighs against transfer.

**G.  Availability of Compulsory Process to Compel Attendance of Non-Party Witnesses**

Rule 45(c)(1)(A) of the Federal Rules of Civil Procedure provides that a subpoena may command a person to attend a trial, hearing, or deposition within 100 miles of where the person resides, is employed, or regularly transacts business in person. Eason notes that any third-party witnesses who may have worked at the Andresen Elmer's in Vancouver but who now live in Portland would be outside of the 100 mile subpoena radius if this case were transferred to Tacoma, while any witnesses who now live in Vancouver would be within subpoena range if the case remains in Portland. Neither party, however, has identified any non-party witnesses, nor has either party asserted that the compulsory process will be needed in this matter. In the absence of

additional information about witnesses' identities and locations, the Court concludes that this factor is neutral.

## H. Ease of Access to Sources of Proof

Although Karsan and Lewis assert that all relevant conduct occurred in Washington, they make no assertions concerning the location of documents and records. In the age of electronic filing, email, and other technological advances, "transporting documents does not generally create a burden." *David v. Alphin*, 2007 WL 39400, at *3 (N.D. Cal. Jan. 4, 2007). In the absence of evidence to the contrary, the Court assumes that the transportation of relevant records and documents, if any, from Washington to Oregon would not create an undue burden on Defendants.

As for non-party witnesses, "[t]he convenience of witnesses, particularly nonparty witnesses important to the resolution of the case, is often cited as the most significant factor in a ruling on a motion to transfer." 15 Charles Alan Wright and Arthur R. Miller, *Federal Practice & Procedure* § 3851 (4th ed. 2015). Eason asserts that many of the Andresen Elmer's employees and patrons may reside in Oregon. Karsan and Lewis respond only that "it is equally plausible, if not more likely, that the majority of witnesses reside in Washington." Dkt. 7 at 4. As neither party identifies its witnesses with specificity, the Court finds it difficult meaningfully to evaluate the effect that a change of venue would have on any non-party witnesses. Accordingly, the Court concludes that this factor is neutral.

## I. Relevant Public Policy of the Forum State

The parties reside in both Oregon and Washington, and both states have an interest in adjudicating disputes involving their residents. The alleged harm, however, occurred to an Oregon resident, and the majority of the claims arise under federal anti-discrimination laws rather than state law. In considering an analogous case involving a dispute over personal

jurisdiction, the Ninth Circuit held that the state where the plaintiffs lived had a strong interest in deciding the case. *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1193 (9th Cir. 2002) ("[A]lthough New York does have an interest in what New York employers do, the bulk of the claims are based on the [Agricultural Worker Protection Act], and Arizona unquestionably has a strong interest in protecting its residents from injury and in furnishing a forum where their injuries may be remedied."); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."). Given the relief sought by Eason, the Court concludes the interest of Oregon outweighs the interest of Washington. As such, the Court finds that this factor weighs against transfer.

**J.  Summary**

To summarize, five of the nine *Jones* factors are neutral. One factor—contacts relating to the cause of action in the forum state—slightly favors transfer because the events of December 16, 2014, occurred in Washington. Three factors—including Eason's choice of forum—weigh against transfer. Considering these factors together, the Court finds that the convenience of the parties and the interests of justice do not require transferring this case to the Western District of Washington, Tacoma Division.

**CONCLUSION**

Karsan and Lewis's Motion to Transfer Venue (Dkt. 5) is DENIED.

**IT IS SO ORDERED**.

DATED this 15th day of March, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge